# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 1:19-cv-21862-COOKE/GOODMAN

MICHAEL I. GOLDBERG, as Receiver
for Jay Peak, Inc., et al.,

     Plaintiff,

v.

MITCHELL SILBERBERG & KNUPP,
LLP, a California limited liability
partnership, et al.,

     Defendants.

_____/

### DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT WITH MEMORANDUM OF LAW, AND REQUEST FOR JUDICIAL NOTICE

Angel A. Cortiñas
Jonathan K. Osborne
GUNSTER
600 Brickell Ave., Suite 3500
Miami, FL 33131
Telephone: (305) 376-6043
acortiñas@gunster.com
josborne@gunster.com

*Counsel for Defendants Mitchell Silberberg & Knupp, LLP, David B. Gordon, and David B. Gordon, a Professional Corporation*

November 29, 2019

Defendants, Mitchell Silberberg & Knupp, LLP ("MSK"), David B. Gordon ("Gordon"), and David B. Gordon, a Professional Corporation ("Gordon P.C.") (collectively referred to herein as the "MSK Defendants"), move to dismiss the Plaintiff's Amended Complaint ("AC") [ECF No. 72]. None of the claims survive legal scrutiny. The claim for civil conspiracy (Count III) must be dismissed under well-settled precedent barring civil conspiracy claims against attorneys acting within the scope of representing a client. Count III also is time-barred and fails to satisfy the heightened pleading standards of the Federal Rules of Civil Procedure and the Private Securities Litigation Reform Act ("PSLRA"). The claims for legal malpractice (Count I), breach of fiduciary duty (Count II), and aiding and abetting breach of fiduciary duty (Count IV) fail to adequately plead causation. Finally, the Amended Complaint fails to adequately allege even a single element of a claim under Florida's Uniform Fraudulent Transfers Act ("UFTA") (Counts V-VII).

## INTRODUCTION

Plaintiff's claims are inextricably intertwined with the pending criminal indictment in Vermont against the MSK Defendants' former clients, Ariel Quiros, William Stenger, and William Kelly, all of whom are facing numerous and serious federal criminal felony charges for their alleged roles in an EB-5 investor scheme. At various times prior to their indictment and while under civil regulatory investigation, Plaintiff alleges that the criminal defendants hired the MSK Defendants to represent them as well as their related companies against an on-going SEC investigation and, later, with other attorneys, State of Vermont civil investigations and inquires. At all times, the criminal defendants and their companies had separate counsel to advise them on their business operations and EB-5 investor offerings.

Plaintiff is the Receiver for several of the criminal defendants' companies. Plaintiff seeks to recover monies from the MSK Defendants for alleged actions within the scope of their legal representation of the criminal defendants and their companies against the SEC and Vermont investigations. Because the Receiver stands in the shoes of the alleged wrongdoer companies, which were controlled entirely by the criminal defendants, the Receiver's recovery theories against the MSK Defendants are barred and cannot survive motions for summary judgment on *in pari delicto*, causation, and damages. The Amended Complaint tries to overcome these insurmountable hurdles by, with the stroke of a pen, attempting to transform the MSK Defendants from attorneys representing alleged

wrongdoers against SEC and Vermont investigations and inquiries into co-conspirators acting in concert with their former clients.  The Amended Complaint must be dismissed.

In 75 paragraphs of new allegations, the Receiver alleges that a lawyer and his law firm employer engaged to defend an SEC investigation somehow "conspired" with clients subject to that investigation—based solely on legal advice provided within the scope of representation.  To that end, the Amended Complaint laces benign allegations with words like "concoct," "mislead," and "cover-up" to ascribe nefarious intent where none exists.  In reality, the MSK Defendants did exactly what attorneys are hired to do: vigorously defended the clients against potential government overreach.  The Amended Complaint is a rapacious attempt to transform a garden-variety legal malpractice lawsuit into an unsubstantiated criminal indictment of an attorney and law firm that acted at all times within the scope of representing clients.  Plaintiff's avarice cannot be overstated.  If successful, the Receiver hopes to recover over $260 million, plus punitive damages.  That amount is more than quadruple the amount alleged in the original Complaint and more than *300 times* the amount the MSK Defendants allegedly received in legal fees for the representation.  Moreover, it seeks an absolute windfall by ignoring the $150 million plus the Receiver has already recovered.  The Receiver crosses the line of zealous advocacy and seeks to gain advantage in this civil case by trying to link a defense lawyer to his former clients' alleged criminal conduct.

## RELEVANT FACTUAL ALLEGATIONS[1]

The Amended Complaint alleges that the SEC's investigation of the Jay Peak EB-5 Program began in 2013, and targeted the "private placement offerings made by Receivership Entities to foreign investors."  AC, ¶ 2.  According to the Receiver, in response to the SEC investigation, Quiros, Stenger, and the Receivership Entities retained MSK and Gordon to represent them as counsel relating to the SEC investigation.  *Id.* at ¶ 3.  The Receiver then alleges that the MSK Defendants learned, "after taking on the representation," of previous allegedly unlawful activity by Quiros, including that "Quiros had directed the commingling

---

[1] The MSK Defendants recount select factual allegations from the Amended Complaint to provide context for the argument raised herein.  The MSK Defendants do not, in recounting these allegations, concede or admit their veracity and reserves all rights to contest the Amended Complaint's allegations.

of tens of millions of in investor funds among the projects' [prior] various phases and entities in an effort to cover construction shortfalls from previous phases." *Id.* at ¶ 4. The Receiver then claims that MSK learned, in the course of the representation, that Quiros allegedly purchased the Jay Peak resort five years earlier, in 2008, "by diverting millions of dollars of EB-5 investor funds held by certain Receivership Entities." *Id.* The Amended Complaint alleges that the MSK Defendants' failure to "advise the Receivership Entities" that these prior actions "violated the securities laws" constituted negligence. *Id.* at ¶ 5.

In the ensuing 161 paragraphs, Plaintiff alleges, among other things, that the MSK Defendants: (a) witnessed Quiros' allegedly incriminating testimony before the SEC, ¶¶ 7, 95, and the allegedly conflicting testimony of other witnesses, ¶ 100; (b) notwithstanding Quiros' allegedly incriminating testimony before the SEC, the MSK Defendants allegedly "conspired with Quiros and Kelly to mislead regulators, including Vermont state regulators and the Florida-based SEC investigation," ¶ 8; (c) "helped Quiros[] concoct a defense" regarding the use of limited partnership funds "paid over to Quiros' development entities under the guise of construction costs," ¶ 90; (d) ████████████████████████████ ████████████████████████████████████████████████████; and (e) failed to disclose allegedly damaging information about its client to Vermont regulators regarding the various phases of the Jay Peak development, ¶¶ 116-123. With respect to damages, the Amended Complaint alleges that the MSK Defendants' failure to "reveal Quiros' actions to [an] innocent decision maker within the Receivership Entities, or to any third party that could have stopped it earlier," including the SEC and Vermont regulators, ¶ 140, "allowed" investment in the project to continue. *Id.*, ¶ 141. According to Plaintiff, this alleged obligation on the part of and concomitant failure by the MSK Defendants to set aside their role as attorneys—and to instead reveal privileged and confidential information obtained during the course of the representation to become whistleblowers—increased the Receivership Entities' "exposure" by "tens of millions of dollars." *Id.* In total, Plaintiff alleges that the MSK Defendants are liable for "more than $250 million" in damages caused by the alleged conspiracy between MSK and its former clients who are now under criminal indictment in Vermont. *Id.*, ¶ 143. Even taking all of these unfounded allegations as true, the Amended Complaint should be dismissed.

**MEMORANDUM OF LAW**

The Amended Complaint alleges 166 paragraphs of general allegations spanning 36 pages, followed by 7 counts, spanning 10 pages.  It is a "proverbial shotgun pleading" that must be dismissed.  *Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1279 (11th Cir. 2006) ("Shotgun pleadings . . . incorporate every antecedent allegations by reference into the subsequent claim for relief or affirmative defense . . . Such pleadings divert already stretched judicial resources into disputes that are not structurally prepared to use those resources efficiently.").  Also as demonstrated below, the Amended Complaint fails to state a claim under Rules 12(b)(6) and 9(b), the PSLRA, UFTA, and applicable legal precedent.

1. **The Receiver Cannot State A Claim For Civil Conspiracy Against Attorneys Acting Within The Scope Of Their Clients' Representation.**

Count III must be dismissed because such claims against attorneys violate public policy by threatening the rights of litigants to independent and zealous counsel and are, therefore, barred in numerous jurisdictions, including the Eleventh Circuit.

    *a. The Eleventh Circuit And Case Law Following Its Precedent Hold That An Attorney Cannot Conspire With His Clients When The Attorney Acts Within The Scope Of The Representation.*

Eleventh Circuit precedent mandates dismissal of Count III because, even accepting the allegations in the Amended Complaint as true, the MSK Defendants acted at all times within the scope of their representation, and, accordingly, could not conspire with Quiros and Kelly.  Under *Farese v. Scherer*, a case of first impression in the Eleventh Circuit, an attorney cannot form a conspiracy with his client when acting within the scope of his representation.  342 F.3d 1223, 1231-32 (11th Cir. 2003).  There, the plaintiff alleged that his former business partner and the partner's attorneys and attorneys' law firm entered into conspiracies to threaten, intimidate, and injure the plaintiff into abandoning lawsuits against the former business partner in violation of 42 U.S.C. § 1985.  *Id.* at 1225-26.  In considering the plaintiff's allegations, the Eleventh Circuit considered "whether attorneys operating within the scope of their representation may be deemed conspirators in a § 1985 conspiracy."  *Id.* at 1230.  In finding that they could not, the court adopted the reasoning of the Third Circuit in a similar case, *Heffernan v. Hunter*, 189 F.3d 405 (3d Cir. 1999), where the Third Circuit recognized the significant public policy and constitutional implications of finding that an attorney could form a conspiracy by conduct within the scope of

4

representing a client. *Id.* at 1231.  Reasoning that "'the right of a litigant to independent and zealous counsel is at the heart of our adversary system and, indeed, invokes constitutional concerns,'" *id.* (quoting *Heffernan*, 189 F.3d at 413), *Farese* held that even if the attorney's conduct violates the canons of ethics, so long as it is within the representation of the client, it does not create a conspiracy. *Id.* The Eleventh Circuit further explained that there are other safeguards present to protect against attorney misconduct in representation, including disciplinary bodies and the sanctioning power of courts in which the improper conduct occurs. *Id.* In rejecting the conspiracy claim, the Eleventh Circuit established two factors to determine that the attorneys did not form a conspiracy with their client: (1) "the attorneys did not engage in any conduct outside the scope of their representation," and (2) "the actions and advocacy of the attorneys appear to have been for the sole benefit of their client rather than for their own personal benefit." *Id.* at 1232.[2]

Citing *Farese* and rejecting civil conspiracy claims against attorneys, various courts, including in Florida and New York, have recognized the danger of permitting "conspiracy theory" claims against attorneys acting within the representation of a client.[3]  *See Miller v. Harden*, 2006 WL 5083825, at *6 (M.D. Fla. Sept. 7, 2006) (stretching the law to permit alleged conspiracies between attorney and client would "create a chilling effect on attorneys as they attempt to represent their clients" and "would deal a great blow to the constitutional system if attorneys were hamstrung in their ability to zealously advocate on behalf of their clients out of fear that party opponents would later be able to sue them for allegedly entering into a constitutionally proscribed conspiracy."); *O'Boyle v. Sweetapple*, 2015 WL 13574304, at *7 (S.D. Fla. June 4, 2015) (mayor and the town's attorneys could not form a conspiracy for actions taken within the scope of representation); *Frierson-Harris v. Hough*, 2006 WL 298658,

---

[2] The fact that attorneys are paid legal fees does not satisfy the "sole personal benefit requirement." *See Heffernan v. Hunter*, No. CIV. A. 97-6041, 1998 WL 633694, at *5 (E.D. Pa. Aug. 12, 1998), aff'd on other grounds, 189 F.3d 405 (3d Cir. 1999).

[3] If this case survives this motion, there are aspects of this case that will require a choice of law analysis.  The MSK Defendants maintain that, to the extent there is a conflict of law, New York law applies to this matter for various reasons, including because Gordon is a New York-licensed lawyer, who practiced from his firm's New York office, and who was hired pursuant to New York's Rules of Professional Conduct. Because Federal, Florida and New York do not materially differ regarding the issues presented by this motion a choice of law analysis is not necessary to resolve this motion.

at *5 (S.D.N.Y. Feb. 7, 2006), *aff'd*, 328 F. App'x 753 (2d Cir. 2009) (conspiracy claim against attorney barred where plaintiff alleged no facts suggesting the attorney took actions outside the scope of the representation or acted motivated by "anything other than concern for the well-being of their client"); *Steed v. EverHome Mortg. Co.*, 2007 WL 9703392, at *3 (N.D. Ga. Oct. 22, 2007) (*Farese* barred a conspiracy claim against an attorney outside the context of § 1985, reasoning that the plaintiff did not allege that the attorney engaged in conduct outside the representation or for his personal benefit); *Armstrong v. Friduss*, 138 F. App'x 189, 193 (11th Cir. 2005) (barring conspiracy claim against lawyer under § 1985).

**b. *Various Courts Have Barred Civil Conspiracy Claims Against Attorneys Outside the Farese v. Scherer Context.***

Cases applying reasoning consistent with the federally-recognized intracorporate conspiracy doctrine also compel dismissal of Count III. In *Gen. Refractories Co. v. Fireman's Fund Ins. Co.*, 337 F.3d 297, 301 (3rd Cir. 2003), for example, the court barred civil conspiracy claims against attorneys, even for conduct that was ultimately sanctioned. There, in a related state case, the plaintiff obtained a sanctions award against the defendant and its attorneys for "'conduct [that] was intentional, inexcusable, and warrant[ed] severe sanctions.'" *Id.* (quoting *Gen. Refractories Co. v. Fireman's Fund Ins. Co.*, 45 Pa. D. & C.4th 159, 164 (Com. Pl. 2000)). The plaintiff brought a separate federal action against the defendant and attorneys based on the same conduct, including a claim for civil conspiracy. *Id.* at 303-04. The U.S. District Court dismissed the civil conspiracy claim and the Third Circuit affirmed, *id.* at 304, explaining that the claim was barred against the attorneys because there were no allegations that the attorneys acted outside the scope of their representation or solely for their personal benefit. *Id.* at 313. The court further reasoned that, even if the attorneys acted with "mixed motives," such as enhancing their representation, or even if the attorneys' conduct was "outrageous," it was still insufficient to state a claim for conspiracy with the attorneys' client because the attorneys acted within the scope of the representation. *Id.* at 313-14.

*Lipsig v. Ramlawi*, 760 So.2d 170, 180-181 (Fla. 3rd DCA 2000), similarly held that an attorney was not liable for conspiracy. 760 So. 2d at 180-81. There, the court explained that "[g]enerally speaking, neither an agent nor an employee can conspire with his or her corporate principal or employer." *Id.* at 180. The exception to the general rule applies

6

"where 'the agent [or employee] has a personal stake in the activities that are separate and distinct from the corporation's interest.'" *Id.* at 181 (quoting *Cedar Hills Properties Corp. v. Eastern Fed. Corp.,* 575 So.2d 673, 676 (Fla. 1st DCA 1991)).   Because the attorney acted "within the scope of his agency as the [client's] attorney," and there was no evidence that the attorney had a personal stake in the activities, the attorney could not conspire with his clients.  *Id.*[4]  Applied here, this Court should dismiss Count III because the Amended Complaint is replete with allegations that the MSK Defendants acted within the scope of their representation of Quiros and other clients, AC ¶ 3.[5]  In fact, the Receiver does not and cannot allege that the MSK Defendants acted outside the scope of their representation, because all of the alleged actions were taken as counsel and the Receiver does not and cannot allege that the MSK Defendants acted solely for their sole personal benefit.  Instead, the allegations in the Amended Complaint demonstrate that the MSK Defendants acted for the benefit of their clients.  Accordingly, Count III should be dismissed.

**2.** **The Receiver's Civil Conspiracy Claim Fails To Meet The Pleading And Causation Standards Of Rule 9(B) And The PSLRA.**

This Court should also dismiss Count III because the Receiver has not pled an actionable claim for securities fraud.  Under Eleventh Circuit precedent, "a claim that is found not to be actionable cannot serve as the basis for a conspiracy claim," *Am. United Life*

---

[4] *See also Stoner v. New York City Ballet Co.*, 2002 WL 523270, at *9 (S.D.N.Y. Apr. 8, 2002) ("Of course, there can be no conspiracy between a corporation and its counsel where the advice or concerted activity was within the scope of the representation."); *Meyer v. Delaware Valley Lift Truck, Inc.*, 392 F. Supp. 3d 483, 496 (E.D. Pa. 2019) (the "two or more persons" required for a conspiracy cannot be "an attorney and the attorney's client"); *Goldschmidt v. Paley Rothman Goldstein Rosenberg & Cooper, Chartered*, 935 A.2d 362, 381 (D.C. 2007) (no viable conspiracy where attorney acts within scope of the engagement and works for the client's benefit, not the attorney's sole personal benefit).

[5] The Receiver alleges, for example, that: the MSK Defendants reviewed and revised offering documents, assisted with the Vermont regulators' investigations, and helped with attempts to refinance the Receivership Entities, AC ¶ 84; ██████████████████████████████████ ██████████████████████████████ ; the MSK Defendants obtained conflict of interest waivers, AC ¶¶ 124-129; the MSK Defendants did not withdraw as counsel, AC ¶¶ 133-134, 140; the MSK Defendants did not advise the Receivership Entities of their rights and obligations under the Ironshore Policies, AC ¶¶ 144-158.

*Ins. Co. v. Martinez,* 480 F.3d 1043, 1067 (11th Cir. 2007). Here, the Receiver alleges, in conclusory fashion, that the MSK Defendants engaged in a conspiracy with some of their former clients to violate U.S. securities laws. *See Czarnecki v. Roller,* 726 F. Supp. 832, 840 (S.D. Fla. 1989) (The "gist of a civil conspiracy is . . . the civil wrong which is done through the conspiracy which results in injury to the Plaintiff."). However, the Amended Complaint does not meet the pleading requirements of either Rule 9(b) or the PSLRA, which govern private actions for securities violations. In addition, any claim for securities fraud against the MSK Defendants is time-barred. Finally, under the PSLRA, "all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss . . . ." *Mogensen v. Body Cent. Corp.*, 15 F. Supp. 3d 1191, 1209 (M.D. Fla. 2014) (quoting 15 U.S.C. § 78u–4(b)(3)(B)). Accordingly, Count III's claim for conspiracy to violate securities laws must be dismissed with prejudice and this action stayed pending resolution of this motion.

"Rule 9(b) imposes a heightened pleading standard for claims sounding in fraud: 'In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.'" *Triton II, LLC v. Randazzo*, 2018 WL 4932342, *3 (S.D. Fla. 2018) (Case No. 18-cv-61469-BLOOM/Valle). Rule 9(b) demands "more than mere conjecture," *U.S. ex rel. Clausen v. Laboratory Corp. of America, Inc.*, 290 F.3d 1301, 1313 (11th Cir. 2002), and "requires that a complaint plead facts giving rise to an inference of fraud." *W. Coast Roofing & Waterproofing, Inc. v. Johns Manville, Inc.*, 287 F. App'x 81, 86 (11th Cir. 2008). As further explained by the Eleventh Circuit, "the particularity rule serves an important purpose in fraud actions by alerting defendants to the precise misconduct with which they are charged and protecting defendants against spurious charges of immoral and fraudulent behavior." *U.S. ex rel. Clausen*, 290 F.3d at 1310.

Count III, like the entirety of the Amended Complaint, is a "shotgun pleading." *Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1279 (11th Cir. 2006). As in *Wagner*, the Amended Complaint "[is] insufficiently detailed for purposes of Rule 9(b) as to the Securities Act claims . . . and the elements of these claims are also insufficiently linked to the large fact section that precedes the counts." *Id.* at 1278-79 (explaining that where the plaintiffs failed to adequately connect the first 175 paragraphs of the complaint to the generally pled fraud claim, the court could not "perform [its] gatekeeping function with regard to the averments of fraud").

Count III also fails to sufficiently allege scienter, reliance, and causation as required by Rule 9(b) and the PSLRA.  The Amended Complaint fails to even identify any particular provision of the securities laws that the MSK Defendants allegedly conspired to violate, and cannot withstand Rule 9(b) or PSLRA scrutiny.  "Rule 9(b) requires that, '[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity' . . . in order to 'alert[ ] defendants to the precise misconduct with which they are charged and [to] protect[ ] defendants against spurious charges of immoral and fraudulent behavior.'"  *Wagner*, 464 F.3d at 1277 (quoting *Durham v. Bus. Mgmt. Assocs.*, 847 F.2d 1505, 1511 (11th Cir. 1986) (quotations omitted)).  As *Wagner* further explains, "'the rule ensures that the defendant has sufficient information to formulate a defense by putting it on notice of the conduct complained of . . . [and] protects defendants from harm to their goodwill and reputation.'"  *Id.* (quoting *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999)) (quotations omitted).  And, as in *Wagner*, the "[t]win purposes of providing notice and protecting reputation" compel dismissal of Count III because it merely alleges generic violations of securities laws.

Furthermore, Count III fails to sufficiently demonstrate the who, what, when, where, and how of Plaintiff's purported reliance on the MSK Defendants' omissions or misstatements.  *See Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1262 (11th Cir. 2006) ("A sufficient level of factual support for a [10b] claim may be found where the circumstances of the fraud are pled in detail. 'This means the who, what, when where, and how: the first paragraph of any newspaper story.'") (quoting *Gross v. Medaphis Corp.*, 977 F. Supp. 1463, 1470 (N.D.Ga.1997)); *see also Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1281 (11th Cir. 1999) (citing *Ross v. Bank S., N.A.*, 885 F.2d 723, 728 (11th Cir. 1989) (a claim for securities fraud must allege "1) a misstatement or omission, 2) of a material fact, 3) made with scienter, 4) on which plaintiff relied, 5) that proximately caused his injury.")).  Instead, Count III focuses on the MSK Defendants' alleged failure to report Quiros' alleged wrongdoing to the SEC or Vermont regulators.  *See*, AC ¶ 186.  Even taken as true for the purposes of this motion, these allegations do not demonstrate ***Plaintiff's*** reliance on the MSK Defendants' purported actions.  And because "reliance is an essential element" of a federal securities fraud cause of action, *Ross v. Bank South*, N.A., 885 F.2d 723, 728 (11th Cir. 1989), Count III fails.  In short, the Receiver's attempt to "afford[] unlimited liability"

to the MSK Defendants for the alleged actions of Quiros amounts to an "abuse[] of the § 10(b) private action" by the Receiver. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 320 (2007) (The PSLRA was "[d]esigned to curb perceived abuses of the § 10(b) private action—'nuisance filings, targeting of deep-pocket defendants, vexatious discovery requests and manipulation by class action lawyers'") (quoting *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit,* 547 U.S. 71, 81 (2006)).

Additionally, Count III fails to adequately allege the MSK Defendants' "intent to deceive, manipulate, or defraud" or establish the level of "severe recklessness" needed to meet the Eleventh Circuit's pleading standard for scienter. As explained in *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1238 (11th Cir. 2008), "[i]n this Circuit it is by now well-established that § 10(b) and Rule 10b–5 require a showing of either an 'intent to deceive, manipulate, or defraud,' or 'severe recklessness.'" (quoting *Bryant v. Avado Brands, Inc.,* 187 F.3d 1271, 1282 (11th Cir. 1999)). "Putting the PSLRA and [the Circuit's] substantive scienter case law together yields the following stringent standard: to survive a motion to dismiss in this case, [Plaintiff] must (in addition to pleading all of the other elements of a § 10(b) claim) plead 'with particularity facts giving rise to a strong inference' that the defendants either intended to defraud investors or were severely reckless when they made the allegedly materially false or incomplete statements." *Id.* at 1238. The Amended Complaint fails this standard.

In fact, Count III incorporates the same 166 paragraphs of facts that purportedly support the Receiver's malpractice and negligence allegations. Thus, the Amended Complaint tries to morph the allegation that the MSK Defendants—who were retained to defend against government scrutiny—were obligated to, but did not, disclose their clients' privileged information to the government, into "overt acts" by a defense attorney to knowingly further an alleged criminal conspiracy. ¶ 186, AC. If that is all it takes to plead a civil conspiracy claim against an attorney, then no defense attorney is safe from a conspiracy claim. Count III then generically alleges that "the specific conduct that gives rise to this claim for civil conspiracy was . . . reckless," among other things, warranting an "award for punitive damages." ¶ 188, AC. But under *Bryant*, severe recklessness "is limited to those highly unreasonable omissions or misrepresentations that involve not merely simple or even inexcusable negligence, but an extreme departure from the standards of ordinary

care, and that present a danger of misleading buyers or sellers which is either known to the defendant or is so obvious that the defendant must have been aware of it." *Bryant*, at 1272 n. 18. An attorney refusing to disclose client confidences to the government is not severe recklessness; it's part of an attorney's job description.

Count III also fails to demonstrate that any statement or omission by the MSK Defendants proximately caused Plaintiff's alleged injury. "To prove the causation element, a plaintiff must prove both 'transaction causation' and 'loss causation.'" *Robbins v. Koger Properties, Inc.*, 116 F.3d 1441, 1447 (11th Cir. 1997). "Transaction causation, another way of describing reliance, is established when the misrepresentations or omissions cause the plaintiff 'to engage in the transaction in question.'" (quoting *Bruschi v. Brown*, 876 F.2d 1526, 1528 (11th Cir. 1989)); *Currie v. Cayman Resources Corp.*, 835 F.2d 780, 785 (11th Cir. 1988). And as demonstrated above, Count III fails to demonstrate transaction or "but for" causation. What is more, the Plaintiff fails to sufficiently allege loss causation, which requires particularized allegations demonstrating that "'that the [alleged] untruth was in some reasonably direct, or proximate, way responsible for his loss.'" *Robbins*, 116 F.3d at 1447 (quoting *Huddleston v. Herman & MacLean*, 640 F.2d 534, 549 (5th Cir. 1981), aff'd in part, rev'd in part on other grounds, 459 U.S. 375 (1983). "'If the investment decision is induced by misstatements or omissions that are material and that were relied on by the claimant, but are not the proximate reason for his pecuniary loss, recovery under the Rule is not permitted.'" *Id.* (citing *Huddleston*). Thus, loss causation describes "the link between the defendant's misconduct and the plaintiff's economic loss." *Rousseff v. E.F. Hutton Co., Inc.*, 843 F.2d 1326, 1329 n. 2 (11th Cir. 1988). Because there is no such link alleged (or possible) in this case, this Court should dismiss Count III of the Amended Complaint.

**3.  <u>Count III Is Time Barred And Must Be Dismissed.</u>**

Count III is also barred by the statute of limitations. Even if this Court finds that the Receiver adequately pled a civil conspiracy, Count III is time-barred by 28 U.S.C. § 1658, which provides that "a private right of action that involves a claim of fraud, deceit, manipulation, or contrivance in contravention of a regulatory requirement concerning the securities laws . . . may be brought not later than the earlier of—(1) 2 years after the discovery of the facts constituting the violation; or (2) 5 years after such violation." Dismissal with prejudice of Count III is thus appropriate because "it is apparent from the

face of the complaint that the claim is time-barred." *United States ex rel. Hunt v. Cochise Consultancy, Inc.*, 887 F.3d 1081, 1085 (11th Cir. 2018).[6]  To illustrate, the "Introduction" of the Amended Complaint alleges that the SEC began investigating the "private placement offerings made by the Receivership Entities to foreign investors through the EB-5 [program]" in 2013, AC, ¶ 2, and that the MSK Defendants' representation began in "mid-2013." AC, ¶ 3.  The Amended Complaint further claims that the MSK Defendants learned "[s]hortly after taking on the representation" that Quiros "had directed the commingling of tens of millions in investor funds . . . in an effort to cover construction shortfalls from previous phases." AC, ¶ 4.  The Amended Complaint further alleges that, between 2014 and 2015, the MSK Defendants gave negligent legal advice to their clients and misled the government.  AC, ¶¶ 7-9.  According to the Receiver, these actions culminated in the Receiver's appointment on April 13, 2016.  AC, ¶¶ 13, 46.  Even if it was not already running by this date, and it likely was given the SEC's lengthy and extensive investigation, the Court's appointment of the Receiver commenced the running of the 2-year "discovery" statute of limitations provided in 28 U.S.C. § 1658(b)(1).[7]  This statute of limitations expired no later than April 13, 2018 (and likely before this date),[8] rendering Count III, which was first alleged on November 7, 2019, time-barred.[9]

---

[6] *See My24HourNews.com, Inc. v. AT&T Corp.*, No. 19-10413, 2019 WL 5205970, at *10–11 (11th Cir. 2019) (a motion to dismiss for failure to state a claim is an appropriate method to allege a statute of limitations defense).

[7] "[D]iscovery of facts evidencing securities misconduct occurs—and the statute of limitations begins to run—when a potential plaintiff has inquiry or actual notice of a violation."  "Inquiry notice means knowledge of facts that would lead a reasonable person to begin investigating the possibility that his legal rights had been infringed; and such notice is triggered by evidence of the possibility of fraud." *Puterman v. Lehman Bros.*, 332 F. App'x 549, 551–52 (11th Cir. 2009) (quoting *Tello v. Dean Witter Reynolds, Inc.*, 410 F.3d 1275, 1283 (2005)) (internal quotations omitted); *see In re Blackburn,* 209 B.R. 4, 13 (M.D. Fla. 1997) (statute of limitation tolled until appointment of receiver).

[8] Even if the Court finds that the Amended Complaint "relates back" to the filing of the original May 8, 2019 Complaint under Fed. R. Civ. P. 15, Count III remains time-barred.

[9] In response, the Receiver will likely rely on the February 9, 2017 tolling agreement entered between the MSK Defendants and the Receiver.  AC, ¶ 166; Tolling Agreement Ex. "A;" *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1342 n.12 (11th Cir. 2014) (under Rule 12(b)(6), a court may consider documents not attached to the plaintiff's complaint where the documents are central to the complaint and their authenticity is not reasonably in dispute).  However, the tolling agreement related only to allegations and defenses of "malpractice,

**4.** **The Receiver's Failure To Plausibly Plead Causation Defeats His Negligence And Breach Of Fiduciary Duty Claims.**

To attempt to support its liability theory, the Amended Complaint alleges—as did the original Complaint—that the MSK Defendants: a) failed to advise the Receivership Entities that violations of the private placement memoranda and securities laws were occurring; b) failed to reveal Quiros' actions to any innocent decision-maker, or to any third party that could have stopped it, including Stenger and regulators in Vermont and with the SEC; and c) failed to withdraw. AC, ¶¶ 5, 7, 140. The Receiver then asks the Court to assume that, had the MSK Defendants performed any of the above actions, the fraudulent scheme would have ended, and therefore resulted in less damages to the Receivership Entities than allegedly occurred. This is not plausible under *Iqbal* and *Twombly*.

*a.* *The Failure To Plead Causation Requires Dismissal Of Counts I, II, And IV.*

First, Plaintiff fails to plausibly plead that someone, including the Vermont regulators or the SEC, would have stopped the scheme and halted investor money from flowing into the Jay Peak projects, if only the MSK Defendants had taken the above actions. Instead, Plaintiff asks this Court to assume this would have occurred, based on 20/20 hindsight, and without factual basis. [10] The baseless and conclusory claim that the Vermont regulators would have halted Phases VII and VIII is fatal to the Receiver's claim.

Second, apart from its purely conclusory allegations, Plaintiff fails to plausibly plead facts establishing that any of the so-called "innocent decision-makers" had the ability to halt the fraudulent scheme. In fact, Plaintiff's own allegations demonstrate they did not.

---

negligence, breach of fiduciary duty, or similar type[s] of claim[s]," and did not toll claims or defenses related to fraud or allegations that the MSK Defendants conspired to commit federal crimes, which the Receiver raised for the first time in the Amended Complaint. The tolling agreement, which is not ambiguous, should be enforced by its terms. As a result, application of the Tolling Agreement cannot revive Count III.

[10] The Receiver's claim that the SEC or Vermont regulators would have stopped the Phase VII and VIII offerings from going forward without any factual allegations in support of that claim represents the kind of speculative pleading the plausibility standard was designed to eliminate. Notably, the Receiver alleges the wrongdoing became known by the MSK Defendants when Quiros testified before the SEC on May 22, 2014. AC, ¶ 7. The Receiver fails to recognize the obvious fact that the SEC too learned of the alleged wrongdoing by Quiros on that day, yet the SEC did not bring an enforcement action until almost 2 years later. *Id.* at ¶159.

According to the Amended Complaint, "Q Resorts . . . owned Jay Peak and the Jay Peak General Partners, as well as JCM and GSI," AC, ¶ 50, and, according to the Raymond James Complaint, "[i]n addition to being the *sole* owner, officer, and director of Q Resorts, [Quiros] is chairman of Jay Peak."  Raymond James ("RJ") Complaint ¶ 13, Ex. "B;" *see Universal Express, Inc. v. S.E.C.*, 177 F. App'x 52, 53-54 (11th Cir. 2006) (a complaint filed in a separate action was a proper subject for judicial notice because "[a] district court may take judicial notice of certain facts without converting a motion to dismiss into a motion for summary judgment" and *"*[p]ublic records are among the permissible facts that a district court may consider").  There, the Receiver further alleged that "Quiros *controlled* each of the Jay Peak General Partners and Limited Partnerships."  Ex. "B" at ¶ 13.  Thus, besides the Receiver's conclusory allegation in the Amended Complaint that "Stenger had the authority to prevent Quiros' use of the funds to purchase the resort, and would have done so had he known," AC, ¶ 62, the Amended Complaint fails to allege any plausible facts demonstrating that Stenger or others within the companies could have halted Quiros' alleged conduct.  The Receiver has not and cannot allege that Quiros was "innocent."

In the face of the above deficiencies, the Receiver alleges—without citation to any legal authority—that the MSK Defendants had a duty to notify the SEC, Vermont regulators, or some other third party of its clients' alleged fraudulent scheme, even though the MSK Defendants were expressly engaged █████████████████████████████ ████████████████████████████████████████.  Not so.  *See Hays v. Page Perry, LLC*, 627 F. App'x. 892 (11th Cir. 2015) (unpublished).  In *Hays*, the Eleventh Circuit (interpreting Georgia law) affirmed dismissal of a receiver's complaint that alleged legal malpractice based on an attorney's supposed failure to report a client to a government regulator, *id.* at 896-98, reasoning that the plaintiff could not meet the plausibility standard without identifying "any authority requiring the lawyers to report their client."  *Id.* at 896. The same result is required here because the Amended Complaint is devoid of citations to authority requiring the MSK Defendants to "report their client[s]."[11]  *Id.*

Finally, the Receiver's assertions that the MSK Defendants' failure to "withdraw

---

[11] The New York Rules of Professional Conduct do not mandate that an attorney disclose client confidences to regulators or a third-party.  *See* N.Y. Rules of Prof. Conduct, 1.6(b).

their representation" somehow kept the alleged fraud afloat is similarly unavailing because the Receiver fails to allege *how* the MSK Defendants' withdrawal would have halted new investor money from flowing into the Jay Peak projects, most of which had been invested long before the MSK Defendants' involvement.  Instead, the Amended Complaint leaves the Court and the MSK Defendants to speculate as to what could have occurred if the MSK Defendants withdrew from the representation.  Allegations that require such guesswork cannot meet the plausibility standard.  The Receiver's allegations that the MSK Defendants had to withdraw—or risk becoming alleged co-conspirators—also fly in the face of a defendant's right to counsel; and an attorney's obligation of zealous advocacy.

### b. The Receiver's Causation Argument Further Fails Because He Has Judicially Admitted That Stenger Is A Wrongdoer And That Quiros Controlled The Entities.

The Receiver alleges that had the MSK Defendants disclosed their alleged knowledge of Quiros' wrongdoing to Stenger, Stenger could have and would have stopped Quiros, resulting in less alleged damage to the Receivership Entities.  AC, ¶¶ 134-136.  The Receiver's position is disingenuous because the Receiver has judicially admitted that Stenger is a wrongdoer and that Quiros "controlled each of the Jay Peak General Partners and Limited Partnerships."  Raymond James ("RJ") Complaint ¶ 13, Ex. "B."[12]  While admissions are typically binding only in the case in which they are made, there is a recognized exception to this rule.  In the bankruptcy context, courts have held the main bankruptcy action and the adversary proceedings to be a single case, including for judicial admissions purposes.  *See In re Gosman*, 382 B.R. 826, 843 (S.D. Fla. 2007); *Kapila v. Davis, Graham & Stubbs LLP*, No. 15-61016-Civ-Scola, 2017 WL 6060639, at *2 (S.D. Fla. Dec. 7, 2017); *In re SMF Energy Corp.*, Adv. Case No. 15–01031–RBR, 2017 WL 7788467, at *3 (Bankr. S.D. Fla. Aug. 11, 2017).  The same rationale applies to a federal equity receivership because cases brought by receivers arise out of the action in which the receiver is appointed.  *See Haile v. Henderson Nat'l Bank*, 657 F.2d 816, 822 (6th Cir. 1981); *Damian v.*

---

[12]A party's admission of facts in its pleadings is binding on that party.  *Cooper v. Meridian Yachts, Ltd.*, 575 F.3d 1151, 1177-78 (11th Cir. 2009) (quoting *Best Canvas Prods. & Supplies, Inc. v. Ploof Truck Lines, Inc.*, 713 F.2d 618, 621 (11th Cir.1983).  "'Indeed, facts judicially admitted are facts established not only beyond the need of evidence to prove them, but beyond the power of evidence to controvert them.'"  *Cooper*, 575 F.3d at 1178 (quoting *Hill v. Federal Trade Comm'n*, 124 F.2d 104, 106 (5th Cir. 1941).

*Massaro*, No. 10–23987–CIV, 2011 WL 3678680, at *2 (S.D. Fla. Aug. 22, 2011).[13]

As explained by the U.S. Court of Appeals for the Sixth Circuit, courts "begin with the undisputed proposition that the initial suit which results in the appointment of the receiver is the primary action and that any suit which the receiver thereafter brings in the appointment court in order to execute his duties is ancillary to the main suit." *See Haile*, 657 F.2d at 822. This is precisely like the bankruptcy case and adversary proceedings, where the main action operates like an umbrella over the adversary matters. Public policy and principles of equity further support this interpretation since a federal receivership is "subject to the general equity power of" the court and since a receiver is an officer of the court. 28 U.S.C. § 959(a); *see Booth v. Clark*, 58 U.S. 322, 331 (1854); *see also S.E.C. v. Elliot*, 953 F.2d 1560, 1567 (11th Cir. 1992); *see also SFM Holdings, Ltd. v. Kim*, Case No. 06-80801-CIV-RYSKAMP/VITUNAC, 2007 WL 9701840, at *2 (S.D. Fla. Feb. 12, 2007); *see also* 44 Fla. Jur. 2D *Receivers* § 87. Accordingly, the Receiver should not be permitted to allege one set of facts against one defendant, but then allege a directly contradictory set of facts against a second defendant in a subsequent but related proceeding.

Yet, in the Raymond James case, the Receiver judicially admitted that Stenger was a wrongdoer in the fraud and claimed that "[i]nvestors received offering materials from Jay Peak and Stenger stating that the monies would be used for legitimate purposes, when in reality, the monies were misused, comingled, and stolen." RJ Complaint, ¶ 44.[14] Further,

---

[13] A court often has subject matter jurisdiction over the subsequently filed action due to ancillary or supplemental jurisdiction. *See Riehle v. Margolies*, 279 U.S. 218, 223 (1929); *Pope v. Louisville, N.A. & C. Ry. Co.*, 173 U.S. 573, 577 (1899); 28 U.S.C. § 1367. This is because the subsequently filed action is essentially part of the main action. *See Haile*, 657 F. 2d at 822; *Damian*, 2011 WL 3678680, at *2.

[14] Further examples include: "Raymond James assisted Quiros and **Stenger** in stealing and misusing funds of various Receivership Entities by actively enabling Quiros and **Stenger's** intricate web of transfers and margin loans to defraud many of the Receivership Entities," *see* RJ Complaint ¶ 1, Ex. "B;" "Though varying in certain details, the structures of the Jay Peak Limited Partnerships were materially the same, and all were used by (sic) Quiros and **Stenger** in their fraudulent scheme." *Id.* at ¶ 35; "Instead of using the partnerships' funds as described in the use of proceeds documents, Quiros and **Stenger** frequently caused Jay Peak Limited Partnership funds to flow in a circular manner among various accounts and entities, which allowed them to misuse and misappropriate investor funds." *Id.* at ¶ 54; "In addition to being the sole owner, officer and director of Q Resorts, he is chairman of Jay Peak.

the Receiver judicially admitted that no one, other than Quiros, had corporate authority to take any action that Quiros, himself, did not want to take. *Id*. In other words, Quiros controlled the entities – not Stenger and especially not Gulisano, Whipkey or Wright. Finally, the Receiver judicially admitted that Stenger abdicated his responsibilities as the principle of the general partner of Phases I-VI.[15] Nothing that the MSK Defendants could have done would have caused Stenger to change course. In light of these admissions, it is totally implausible that Stenger, Gulisano, Whipkey or Wright could have and would have stopped the fraud "but for" the MSK Defendants' failure to tell them about it. Since the Receiver's allegations are facially implausible, dismissal is warranted.

### 5. The Amended Complaint's Allegations Under UFTA Should Be Dismissed For Failure To State A Claim.

Count V, Count VI, and Count VII further demonstrate that the Amended Complaint is an improper "shotgun pleading" because each of these counts incorporates 166 prior numbered paragraphs, but there is no discernible factual link between the antecedent paragraphs and Plaintiff's claims for fraudulent transfer under Florida's Uniform Fraudulent Transfers Act ("UFTA"), Fla. Stat. §§ 726.105 - 726.106; *see Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001) (criticizing a complaint, which, like the Amended Complaint, is "replete with factual allegations that could not possibly be material to that specific count, and [] an allegations that are material are buried beneath [] pages of rambling irrelevancies."). And even considering the allegations in Counts V-VII on their merits, the Plaintiff fails to state a claim.

As to Count V, under Fla. Stat. Sec. 726.105(1)(a), the Plaintiff must demonstrate that: "(1) there was a creditor to be defrauded; (2) a debtor intending fraud; and (3) a conveyance of property which could have been applicable to the payment of the debt due." *Nationsbank, N.A. v. Coastal Utilities, Inc.*, 814 So. 2d 1227, 1229 (Fla 4th DCA 2002). The

---

Through those two companies, Quiros controlled each of the Jay Peak General Partners and Limited Partnerships." *Id*. at ¶ 13.

[15] "**Stenger**, as the principal of the general partner in Phases I-VI, always had ultimate responsibility for the overall management and control of the business assets and the affairs of the six limited partnerships. **Stenger** abdicated these responsibilities by giving Quiros complete control of the partnerships' funds and by placing investor funds in accounts to which he did not have access." RJ Complaint, ¶ 79.

Plaintiff has failed to adequately allege any of the above elements.  First, Count V fails to identify which of the "Limited Partnerships" are the alleged "creditors" to be defrauded, or a single fact supporting the conclusory allegation that "Quiros, through the Limited Partnerships and GSI, made transfers to the MSK Defendants (and R&P as the MSK Defendants' predecessor) totaling approximately $800,000."  AC, ¶ 200.  Second, the Receiver fails to identify: (1) a debt, (2) "'a debtor intending fraud'" or (3) any specific "conveyance of property which could have been available to satisfy [the alleged] debt."[16] *Oginsky v. Paragon Properties of Costa Rica LLC,* 784 F. Supp. 2d 1353, 1360 (S.D. Fla. 2011) (dismissing fraudulent transfer claims under Section 726.105(1)(a) because complaint failed to adequately identify the debtors).  Third, Plaintiff has not alleged "the intent element" required under the UFTA, which, in § 726.105(2), lists "eleven nonexclusive 'badges of fraud' that may be considered in determining actual intent."  *See Oginsky,* at 1370 (finding that the plaintiff failed to adequately allege intent where the complaint did not allege the existence of "any of these badges of fraud").  Accordingly, Count V must be dismissed.

So too must Count VI, which fails to state a claim under § 726.105(1)(b).  The elements of a § 726.105(1)(b) claim are that "a debtor made a transfer or incurred an obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor: 1) [w]as engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or (2) [i]ntended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his ability to pay as they became due."  Fla. Stat. Sec. 716.105(1)(b).  Yet, the Plaintiff fails to identify a debtor; to allege a specific transfer; or to even allege the Receivership Entity or Limited Partnership allegedly involved in the transaction.  The Plaintiff further fails to provide any factual support beyond a "formulaic recitation" of the elements of the cause of action.  *See* AC, ¶ 207.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("[A] plaintiff's obligation to provide the

---

[16]Plaintiff's UFTA claims are so lacking in particularity that MSK cannot identify a single alleged "transfer," identify the alleged debtor, or determine the alleged relevance of the purported link between GSI and the "Limited Partnerships."  As a result, MSK cannot determine whether and to what extent Plaintiff's claims in Counts V-VII are time-barred by UFTA's 4-year statute of limitations.

grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.") (internal quotations omitted).  For example, the Receiver does not allege the "business or transaction" in which Quiros and GSI purportedly engaged or what "remaining assets were unreasonably small" or what "debts" were beyond "their ability to pay as they became due."  *See* AC, ¶ 207. Count VI also does not allege any factual link between the allegations in paragraph 207 and the MSK Defendants' alleged acceptance of transfers, which is passingly referenced in paragraph 208.  Furthermore, as in *Oginsky*, Count VI contains no allegations regarding the two alternative elements of § 726.105(1)(b)(2).  "Because Plaintiffs have not pled an element of this cause of action, the claim fails to meet Rule 8(a)(2)'s requirements and must be dismissed."  *Oginsky*, 784 F. Supp. 2d at 1371.

Count VII equally warrants dismissal.  Count VII contains yet another "formulaic recitation" of the elements of a claim under § 726.106(1), *see* AC, ¶¶ 212-213, but fails to specify the alleged "debtor," the date or amount of any alleged "transfer," the alleged "creditor" to which Count VII relates, the details of a "claim" attributable to the "creditor," or facts related to GSI's alleged insolvency.[17]  Simply put, in the absence of supporting factual allegations, Count VII does not "satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests."  *Bell Atl. Corp. v. Twombly,* 550 U.S. 544 n.3 (2007)).  It must be dismissed.

### 6.  The Receivership Entities Did Not Retain MSK Regarding Insurance Coverage.

An attorney is not liable for legal malpractice for failing to take actions that fall outside the scope of the lawyer's retainer agreement.  *See, e.g.*, *Attallah v. Milbank, Tweed, Hadley & McCloy, LLP*, 93 N.Y.S. 3d 353, 356 (N.Y. App. Div. 2019); *Kates v. Robinson,* 786 So. 2d 61, 64 (Fla. 4th DCA 2001) (legal malpractice complaint properly dismissed with prejudice where attorney was not hired to pursue the subject action alleged in the

---

[17] *See RREF SNV-FL SSL, LLC v. Shamrock Storage, LLC*, 250 So. 3d 788, 789-90 (Fla. 1st DCA 2018) ("Under section 726.106, a [] transfer is fraudulent as to a creditor if (a) the creditor's claim arose before the transfer, (b) the debtor was insolvent at the time of the transfer or became insolvent because of the transfer, and (c) the debtor made the transfer without receiving reasonably equivalent value in exchange for the transfer.")

complaint).[18]  Nevertheless, the Receiver alleges that "Gordon and MSK . . . failed to advise the Receivership Entities regarding their rights and obligations under the Ironshore policies." AC, ¶ 150.  But neither the Receivership Entities nor their principals ever hired R&P (or MSK by merger), AC ¶ 14, to provide insurance coverage advice. ███████████

██████████████████████████████████████████████████████████

██████████████████████████████████; *Perez*, 774 F.3d 1329 (11th Cir. 2014) (under Rule 12(b)(6) court may consider documents central to the complaint where authenticity is not reasonably in dispute). ███████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████  █  █████████████████████████

██████████████████████████████████████████████████████████

█████████████████████████████████████  Furthermore, the Amended Complaint never alleges that the Receivership Entities *requested* MSK Defendants to provide counsel regarding insurance coverage; or that the MSK Defendants agreed to do so. Without alleging both an obligation to advise—and a failure to advise—the Receiver's claims related to the Ironshore policies fail and must be dismissed.  AC, ¶¶ 144-158, 173.



## CONCLUSION

The Amended Complaint is a shotgun pleading that impermissibly attempts to convert what was originally pled as a legal malpractice action into a case about a so-called "conspiracy" by an attorney and his law firm—and their clients—to violate unspecified securities laws.  Based on the foregoing, the Amended Complaint should be dismissed.

---

[18] *Acevedo v. L.A. Weight Loss Centers, Inc.*, No. 03-61615-CIV, 2004 WL 6341018, at *6 (S.D. Fla. Nov. 23, 2004) (to state a claim for legal malpractice under Florida law the plaintiff must "also allege and show that a relationship existed between the parties with respect to the acts or omissions upon which the malpractice claim is based").

Respectfully submitted,

By: */s/ Jonathan K. Osborne*
Jonathan K. Osborne, FBN 95693
josborne@gunster.com
Angel A. Cortiñas, FBN 797529
acortiñas@gunster.com
GUNSTER
600 Brickell Ave., Suite 3500
Miami, Florida 33131
(305) 376-6000
*Counsel for MSK Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 29, 2019, a true and correct copy of the foregoing document was filed electronically with the Clerk of the Court, using the CM/ECF system, which sent notification of such filing to all parties and counsel in this case.

By: */s/  Jonathan K. Osborne*
Jonathan K. Osborne

ACTIVE 11433498.1